Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

Constance Van Kley
Rylee Sommers-Flanagan
Upper Seven Law
P.O. Box 31
Helena, MT 59624
406-306-0330
constance@uppersevenlaw.com
rylee@uppersevenlaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| MARCUS AZURE, | ) | CV 22-30-M-DWM |
| | ) | |
| Plaintiff, | ) | **FIRST AMENDED** |
| | ) | **COMPLAINT** |
| v. | ) | **AND** |
| | ) | **JURY DEMAND** |
| LAKE COUNTY, MONTANA; BILL BARRON; | ) | |
| STEVE STANLEY; GALE DECKER; KATE | ) | |
| STINGER; DONALD BELL, BEN WOODS, and | ) | |
| DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Marcus Azure now files his First Amended Complaint and alleges as follows:

**Jurisdiction**

1. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 USC §1343(a)(3), and pendent jurisdiction over Plaintiff's state claims.

**The Parties**

2. Defendant Lake County is the political subdivision of the State of Montana that owns and operates the jail. Defendants Bill Barron, Steve Stanley, and Gale Decker are the Commissioners of Lake County, Montana. The Commissioners are the governing body of Lake County, and are responsible by law for the maintenance, operation, inspection, furnishing, and repair of the jail. Defendant Kate Stinger is the Executive Administrative Assistant of Lake County, and is responsible for enacting decisions of the Commissioners. Defendant Donald Bell is the Lake County Sheriff and Defendant Ben Woods is the Lake County Undersheriff. They are responsible by law for the management and control of the jail, and the custody and care of the inmates confined in the jail.  Defendants Does 1-10 are individuals whose true identities and capacities are as yet unknown to Plaintiffs and their counsel, despite diligent inquiry and investigation, and who acted herein as described more particularly below in connection with the breaches of duties and/or violations of law alleged here and who in some manner

or form not currently discovered or known to Plaintiffs may have contributed to or be responsible for the injuries alleged here. The true names and capacities of the Doe Defendants will be substituted as they become known.

3.  At all relevant times, individual Defendants acted under color of law and in the course and scope of their employment and/or on behalf of Lake County.

4.  Plaintiff was recently incarcerated in the Lake County jail and was incarcerated there at the filing of his original Complaint.

5.  Plaintiff has exhausted his administrative remedies and jurisdiction is proper in this Court.

## Factual Allegations

6.  The Lake County jail is used to confine pre-trial detainees who have not yet been convicted of any crime, and who bear the legal presumption of innocence; inmates who have been convicted of criminal offenses and sentenced to a term of imprisonment in the jail; and individuals who have been convicted of crimes and sentenced to the Montana State Prison, and are awaiting transfer to that facility or another facility. Inmates are confined in the jail for periods extending from a few hours to more than three years in length.

7.  Inmates are deprived of the essentials of soap, toothpaste, and shampoo for unreasonable periods of time.

8.  Inmates are required to share razors, thereby creating a health hazard.

9.  Inmates are crowded into cells and many inmates are required to sleep on broken bunks or on the floor in inadequate bedding.

10. Because the jail is overcrowded and because of inadequate screening processes, inmates are not appropriately categorized and segregated, leading to physical violence within cell blocks.

11. Heating and cooling vents are visibly clogged, and appropriate room temperatures cannot be maintained.

12. Inmates regularly lack access to hot water for periods of days or longer.

13. The jail is infested with insects, and inadequate measures are taken to control and prevent such infestation.

14. The physical infrastructure of the jail is deteriorating to the point of failure, with beds detaching from walls; ventilation systems unable to properly provide air exchange; paint peeling from walls and ceilings; metal surfaces rusting; mold growing on ceilings, walls, floors, and mattresses; and non-functional sanitation systems. This physical deterioration of the jail presents hazards to inmates' mental and physical health.

15. The jail has no reasonable plan to ensure inmates' safety in the event of a fire. The jail lacks appropriate fire alarm systems, emergency protocols, and fire suppression equipment.

16. Most cells lack intercom systems, and inmates must pound on the door and yell to notify staff in the event of an emergency.

17. The jail offers little or no opportunity for exercise or recreation by inmates, and no opportunity for outdoor recreation. As a result of crowding, the small dedicated recreational space in the jail is often used for housing inmates. Even when it is available for recreation, the space does not provide access to the outdoors and is empty of exercise equipment.

18. Inmates lack reasonable access to fresh air and sunlight.

19. Most inmates are required to spend 24 hours of every day in enforced idleness in small cellblocks or in segregation. This results in unreasonable and unnecessary psychological stress and physical deterioration for the prisoners.

20. Inmates are deprived of reasonable access to a law library, legal resources, or to persons trained in law.

21. Inmates are deprived of reasonable opportunities to petition for redress of grievances.

22. The visiting room is regularly used as a solitary confinement cell, and it is so small that there is no room to walk when a mattress is placed on the floor. This room lacks running water and a toilet. At least one inmate has hanged himself from the phone in this room while in solitary confinement.

23. Based on information and belief, jail staff open and read privileged inmate mails, including legal mail.

24. Inmates are effectively deprived of reasonable access to medical care. They are required to pay $10.00 when they request medical care, regardless of insurance status, tribal membership, and indigency. Inmates are charged even when they do not see a licensed practitioner.

25. Inmates are deprived of reasonable dental care.

26. The jail does not provide reasonable accommodations for inmates with disabilities.

27. Food portions are inadequate, and there is insufficient variation in meals.

28. The jail fails to provide special diets for inmates with special dietary practices and needs.

29. The jail fails to allow reasonable opportunity for visitation by family members and friends, as the visitation cell generally is used to house inmates.

30. The jail fails to allow reasonable opportunity for private communications with counsel. Inmates must confer with counsel in public-facing areas with audio and video recording equipment installed, and others may hear their communications.

31. The jail fails to disseminate jail rules and regulations adequately to inmates.

32. Native American inmates are denied access to Native American religious ceremonies, tribal and religious leaders, and ceremonial materials.

33. Although most inmates are Native American, inmates are given access exclusively to Christian religious ceremonies.

34. Native American inmates are denied their right to engage in reasonable Native American religious practices, and therefore the free exercise of their religion.

35. On or about February 23, 2022, Plaintiff was resting in his bunk when the bunk's metal bracket dislodged from the cell wall, causing the bunk to fall and injure Plaintiff by gashing his head. Plaintiff required seven staples to close the wound.

36. Jail staff did not respond to banging on the cell door by Joseph Couture and Donald McLeod, other occupants of the cell, who attempted to get medical attention for Plaintiff's wound.

37. Jail staff eventually responded, but did not provide immediate medical attention for Plaintiff. Jail staff called the gash on Plaintiff's head a "scratch," and determined that he did not need medical attention.

38. Plaintiff's wound continued to bleed excessively for over two hours.

39. Plaintiff's family called the jail asking the jail to provide medical attention to Plaintiff.

40. After two hours, jail staff took Plaintiff to the hospital, where seven staples were required to suture his scalp wound.

41. Defendants caused Plaintiff, Joseph Couture, and Donald McLeod to be cited for criminal mischief on February 25, 2022, alleging that they had deliberately broken the bunk from the wall.

42. Plaintiff, Joseph Couture, and Donald McLeod did not commit any overt act to break the bunk or cause it to dislodge and fall from the wall. Plaintiff was laying in the bunk when it collapsed.

43. Defendants failed to keep Plaintiff's bunk and cell in a reasonably safe condition.

44. Through their acts and omissions described above, Defendants fail to operate and maintain the Lake County jail in a manner consistent with the requirements of federal and state law. Unless and until this Court grants

injunctive relief as requested here, Plaintiff will continue to suffer irreparable injury due to the cruel and unusual punishment, and other illegal and unconstitutional conditions, that are forced upon him on a daily basis.

45.   This suit seeks money damages as compensation for the injuries and damages incurred and continuing to be incurred by Plaintiff that were caused by the negligent and wrongful acts and omissions of Defendants and their agents, acting within the scope of their office and employment.

46.   While acting under the color of state law, Defendants subjected Plaintiff to deprivation of rights, privileges, or immunities secured by the United States Constitution, namely that Defendants deprived Plaintiff of adequate medical care.

47.   Defendants acted with deliberate indifference to the substantial risk of serious harm to Plaintiff.

48.   Plaintiff would have suffered less harm if Defendants had not acted with deliberate indifference to the substantial risk of harm to Plaintiff.

49.   Plaintiff had a serious medical need which was so obvious a lay person could recognize the necessity for a doctor's attention. Defendants were subjectively aware of Plaintiff's serious medical need.  Defendants' responses to Plaintiff's medical needs were medically unacceptable under the circumstances and were made in conscious disregard of an excessive risk to Plaintiff's health.

50. Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of his Constitutional rights. Defendants' deliberate indifference shocks the conscience and offends the community's sense of fair play and decency, and resulted in harm to Plaintiff.

51. At all times pertinent, Defendants were subject to a duty of care under law to protect Plaintiff's constitutional, statutory, and common law rights.

52. Defendants breached the applicable standards of care, including negligent violation of Plaintiff's constitutional, statutory, and common law rights, and negligent performance of official duties.

53. Defendants' conduct caused damage to Plaintiff.

54. As a result of the acts and omissions described above, Defendants have deprived Plaintiff of the rights secured by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, including, but not limited to, his rights to due process of law and the equal protection of the laws; his rights to be free from cruel and unusual punishment; and his rights to access to the courts.

55. Plaintiff seeks relief under 42 USC § 1983.

56. As a result of the acts and omissions described above, Defendants have deprived Plaintiff of the rights secured him by Article II, Sections 3, 4, 5, 16, 17, 22, 28, and 34 of the Montana Constitution; the Montana Religious Freedom

Restoration Act, MCA § 27-33-101, *et seq.*; and state statutory law relating to the operation and maintenance of jails and the rights of prisoners, including MCA §§ 7-32-2121; 7-32-2201; 7-32-2204; 7-22-2205; 7-32-2222; 7-32-2234; 45-5-204; 46-18-101; and 46-18-801.

57.   Plaintiff seeks relief under this Court's pendent jurisdiction of state law claims.

## Prayer for Relief

For all of the above-stated reasons, Plaintiff requests that this Court award the following relief:

1. Assume jurisdiction of this action.

2. Issue final declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that Defendants have violated Plaintiff's rights secured by the constitutions and laws of the United States and the State of Montana.

3. For judgment in such amounts as shall be proven at the time of trial.

4. Award Plaintiff his reasonable attorney's fees and costs.

## Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

Dated March 28th, 2022

/s/Timothy M. Bechtold
BECHTOLD LAW FIRM

/s/Constance Van Kley
/s/Rylee Sommers-Flanagan
UPPER SEVEN LAW

Attorneys for Plaintiffs